Filed 12/24/20  Emens v. Cal. Catholic Conference CA2/2
(unmodified opinion attached)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THOMAS EMENS, | B297322 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC723908) |
| v. | |
| CALIFORNIA CATHOLIC CONFERENCE et al., | ORDER MODIFYING OPINION AND DENYING REHEARING |
| Defendants and Appellants. | NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on December 3, 2020, be modified as follows:

1. On page 14, bottom of the page, and continuing on to the top of page 15, the sentence that begins with "Here, it is undisputed" insert the phrase "or promptly" in between the

words "previously" and "disclosed" so the sentence reads as follows:

> Here, it is undisputed that a majority of the Church defendants for the first time publicly disclosed the names of priests credibly accused of sexual abuse after this lawsuit was filed; this first-time disclosure strongly suggests that those defendants had not previously or promptly disclosed those names and crimes, including to the authorities, in violation of California law.

2. On page 15, top of the page, delete the following sentence:

> The Church defendants did not, in their reply, dispute the fact that they had not disclosed the priests on these lists to law enforcement.

3. On page 15, immediately following the sentence modified in point one above, insert the following language after the sentence ending with "in violation of California law" and before the sentence beginning with "Thus, whether it is deemed to be conceded or conclusively established":

> Although a report of abuse to law enforcement is confidential (Pen. Code § 11167, subd. (d)(1)), the uncontested inference that the Church defendants violated their reporting duties (and, therefore, relinquished any "protected activity" shield), is dictated by the record. In their reply in support of their anti-SLAPP motion, the Church defendants neither refuted plaintiff's recounting of specific instances of delayed disclosures to law enforcement

2

that allowed some priests to flee from the country nor disputed plaintiff's assertion that they had not disclosed to law enforcement *all* of the priests whose names appeared in the public disclosures. Indeed, the San Bernardino Diocese's public disclosure itself revealed that, in several instances, the Diocese reported abuse to law enforcement long after learning of the abuse.

4. On page 15, the sentence beginning with "Thus, whether" insert "alleged" between "Church defendants'" and "failure"; and insert "all of" between "report" and "the prior crimes" so the sentence reads as follows:

> Thus, whether it is deemed to be conceded or conclusively established, the Church defendants' alleged failure to report all of the prior crimes to the pertinent authorities is illegal as a matter of law and, thus, not "protected activity" within the meaning of the anti-SLAPP statute.

\* \* \*

There is no change in the judgment.
Appellants' petition for rehearing is denied.

_____

LUI, P. J.                CHAVEZ, J.                HOFFSTADT, J.

Filed 12/3/20  Emens v. California Catholic Conference CA2/2 (unmodified opinion)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THOMAS EMENS,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>CALIFORNIA CATHOLIC CONFERENCE et al.,<br><br>        Defendants and Appellants. | B297322<br><br>(Los Angeles County Super. Ct. No. BC723908) |

        APPEAL from an order of the Superior Court of Los Angeles County, Michelle Williams Court, Judge.  Affirmed in part and reversed and remanded in part with directions.

        McKool Smith Hennigan, J. Michael Hennigan, Lee W. Potts and Elizabeth S. Lachman for Defendants and Appellants The California Catholic Conference, Inc. and The Roman Catholic Archbishop of Los Angeles.

Weintraub Tobin Chediak Coleman Grodin, Paul E. Gaspari, Daniel C. Zamora and Brendan J. Begley for Defendants and Appellants The Roman Catholic Archbishop of San Francisco, The Roman Catholic Bishop of Monterey, and The Roman Catholic Bishop of San Jose.

McCormick Barstow and Mart B. Oller, IV for Defendant and Appellant The Roman Catholic Bishop of Fresno.

Foley & Lardner, Jeffrey R. Blease, David B. Goroff (pro hac vice) and Nicholas P. Honkamp for Defendant and Appellant The Roman Catholic Bishop of Oakland.

Sheppard, Mullin, Richter & Hampton, Alan H. Martin, Jason A. Weiss and Karin Dougan Vogel for Defendant and Appellant The Roman Catholic Bishop of Orange.

Greene & Roberts and Stephen J. Greene, Jr. for Defendant and Appellant The Roman Catholic Bishop of Sacramento.

Fullerton, Lemann, Schaefer & Dominick, Wilfrid C. Lemann and David P. Colella for Defendant and Appellant The Roman Catholic Bishop of San Bernardino.

Gordon Rees Scully Mansukhani, Manuel Saldana and M. Christopher Hall for Defendant and Appellant The Roman Catholic Bishop of San Diego.

Shapiro, Galvin, Shapiro & Moran, Adrienne M. Moran and Daniel J. Galvin, III for Defendant and Appellant The Roman Catholic Bishop of Santa Rosa.

Jeff Anderson & Associates, Michael J. Reck, Michael G. Finnegan; Arkin Law Firm and Sharon J. Arkin for Plaintiff and Respondent.

\* \* \* \* \*

2

A man who was molested by a Catholic monsignor as a child sued various Catholic Church organizations in California to enjoin the Church's alleged policy of concealing and lying about the proclivities of its priests to sexually abuse children. The Church organizations filed a motion to dismiss the man's causes of action under the anti-SLAPP statute (Code Civ. Proc., § 425.16).[1] The trial court partially granted and partially denied the motion, striking some but not all of the allegations underlying the man's causes of action. The Church organizations appeal, arguing that the court should have dismissed the man's action in full. We largely affirm the trial court's rulings on the anti-SLAPP motion, but agree with the Church organizations that a remand for further proceedings on the man's currently pled causes of action would be futile in light of the trial court's unchallenged findings that those causes of action are fatally deficient. Accordingly, we direct the trial court to dismiss the currently pled causes of action in their entirety. However, on remand, the man should be given the opportunity to amend his complaint.

## FACTS AND PROCEDURAL BACKGROUND

I.   **The Complaint**

A.   *General allegations*

On October 2, 2018, Thomas Emens (plaintiff) sued eleven subdivisions of the Catholic Church within California (namely,

---

[1] "SLAPP" is short for Strategic Lawsuit Against Public Participation.

All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

two Archdioceses and nine Dioceses)[2] as well as the California Catholic Conference (the Conference), which is the body that "coordinat[es], create[s], decid[es], and disseminat[es]" the policies to be followed by those subdivisions.[3] Plaintiff alleged that all 12 defendants (collectively, the Church defendants) were "co-conspirators" that made collective "[d]ecisions" as "part of a cohesive and coordinated plan."

### B. *Alleged misconduct*

Plaintiff alleges that the Church defendants have, "for decades," "endangered numerous children" by adopting and implementing "policies and practices of covering up" the criminal, sexual misconduct of their priests. Plaintiff specifically identifies what boils down to four such policies and practices:

(1) *Failing to report sexual molestation crimes.* Plaintiff alleges that the Church defendants have "fail[ed] to report known and/or suspected sexual abuse of children" by priests and other "agents" (a) "to the police and law enforcement," and (b) to "the proper civil authorities";

(2) *Continuing to employ priests who have engaged in sexual molestation conduct.* Plaintiff alleges that the Church defendants "have maintained and continue to maintain sexually abusive priests in employment despite knowledge or suspicions of

---

[2] Specifically, plaintiff sued the Archdioceses of Los Angeles and San Francisco, and the Dioceses of Sacramento, Santa Rosa, Oakland, San Jose, Monterey, Orange, San Bernardino, San Diego, and Fresno.

[3] Plaintiff also sued the Archdiocese of Chicago, but later dismissed it.

4

child sex abuse," and do so by "transferring [those priests] to new locations";

(3)     *Deceiving the public, parishioners and prior victims of their priests' sexual abuse—through affirmative misrepresentations and concealment—about past and present sexual abuse by their priests.* Plaintiff alleges that the Church defendants have assured prior victims of their priests' sexual abuse, their parishioners and the public in general that (a) the Church defendants have competently addressed the issue of sexual abuse by priests by adopting and implementing policies of promptly responding to sexual abuse allegations, reporting such allegations to the authorities and to the public, cooperating with resulting investigations, and disciplining offenders, (b) sexual abuse by priests is "a problem of the past," and (c) the Church defendants' programs for children, and the communities in which the priests live, are accordingly "safe[]" for children because the priests are "fit[] for employment in positions that include working with children." Plaintiff further alleges that these assurances amount to affirmative misrepresentations and concealment because, as noted above, the Church defendants continue to employ priests who have engaged in sexual abuse, continue to conceal their crimes from the criminal and civil authorities, and continue not to disclose information about those crimes to prior victims, their parishioners and the public;

(4)     *Attacking the credibility of victims of their priests' sexual abuse.* Plaintiff alleges that the Church defendants make affirmative misrepresentations "attack[ing] the credibility of [the] victims of" their priests' prior sexual abuse.

5

## C.   *Causes of action*

Based on the above described conduct, plaintiff's complaint alleges claims for (1) public nuisance, and (2) civil conspiracy.[4]

As the basis for the public nuisance claim, plaintiff alleges that the Church defendants' practices constitute a public nuisance that is "injurious" to the "health, safety, and welfare of the general public" because those practices of "deception and concealment" "create[]" and "expose[]" "the public to . . . unsafe conditions" by placing "children . . . at risk of being sexually assaulted."  Plaintiff further alleges that the Church defendants' practices were "specially injurious" to him because they caused him heightened "mental, emotional and/or physical distress" as a victim of molestation by a Catholic priest in the late 1970s.

As the basis for the civil conspiracy claim, plaintiff alleges that the Church defendants' practices are part of a "civil conspiracy to conceal the true nature of [the] sexual abuse of minors in the Dioceses across California."

In the complaint, plaintiff prays for compensatory damages, and an injunction requiring the Church defendants "to publicly release the names of all . . . priests[] accused of child molestation," along with those priests' "history of abuse," "pattern of grooming and sexual behavior," and "last known address."

## II.   The Anti-SLAPP Motion

In late December 2018, the Church defendants filed an anti-SLAPP motion requesting that the trial court strike

---

4      Plaintiff also alleged a claim for private nuisance, but has affirmatively abandoned it on appeal.  In light of that abandonment, we order the trial court to dismiss that claim on remand.

6

plaintiff's entire complaint.[5]  In that motion, the Church defendants included a copy of the charter setting forth the Church defendants' official policy for responding to allegations of sexual abuse by their priests; the charter was initially drafted in 2002 and is periodically updated.  Plaintiff opposed the motion.  Along with his opposition, plaintiff attached evidence that seven of the Church defendants had—since the filing of this lawsuit—publicly released lists naming priests who had been credibly accused of engaging in sexual abuse.  The Church defendants replied.[6]

Following a hearing in March 2019, the trial court issued an April 2019 order partially granting and partially denying the anti-SLAPP motion.

As a threshold matter, the court ruled that *some* of plaintiff's claims were based in part upon activity protected by the anti-SLAPP statute, and some were not.  Specifically, the court concluded that the allegations involving misrepresentations and concealment by the Church defendants, as well as false speech about the victims, constituted "protected activity" because this alleged conduct "implicate[d]" the Church defendants' First Amendment "right of free speech, including the right not to

---

[5]    The Conference and the Archdiocese of Los Angeles filed the lead anti-SLAPP motion and the lead reply, which the other Church defendants joined.

[6]    The Church defendants also filed several evidentiary objections to the exhibits accompanying plaintiff's opposition, but the trial court did not rule on them.  Because our analysis does not depend on this evidence, we decline the parties' invitations to review these evidentiary objections in the first instance.

speak." At the same time, the court concluded that the allegations involving concealment of sexual abuse "from [the] authorities" and allowing priests with histories of sexual abuse to continue to serve in "assignments which included working with children" were *not* "protected activity" because "[p]rotecting abusers from criminal prosecution is neither free speech nor petition" and because "affirmative representations of the fitness" of priests for certain assignments "is not an issue of free speech, but an issue of false speech."

Because plaintiff's claims were based in part upon "protected activity," the trial court next examined whether plaintiff's claims had "minimal merit." The court concluded they did not. The public nuisance claim failed because plaintiff did not establish his standing to prosecute such a claim because his injury—namely, "his emotional distress"—was "merely different in degree," not "different in kind" from the injury the Church defendants' alleged conduct inflicted upon the general public. The civil conspiracy claim failed because it requires a viable claim for an "underlying tort," and plaintiff's public nuisance claim was not viable.

## III.  Appeal

The Church defendants filed this timely appeal. Plaintiff did not appeal.

### DISCUSSION

In this appeal, the Church defendants argue that the trial court erred (1) in not dismissing plaintiff's entire complaint under the anti-SLAPP statute because *all* of plaintiff's allegations constitute "protected activity" within the meaning of the statute, and (2) in not otherwise dismissing plaintiff's entire complaint once the court determined that his public nuisance and civil

conspiracy claims are fatally flawed. We independently review a trial court's denial of an anti-SLAPP motion. (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067 (*Park*); *Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 884-885 (*Wilson*).) We also independently review the question whether dismissal is warranted even apart from the anti-SLAPP statute because that question turns on issues of law and the application of that law to undisputed facts. (*Compulink Management Center, Inc. v. St. Paul Fire & Marine Ins. Co.* (2008) 169 Cal.App.4th 289, 295.) In undertaking this independent review, we are not bound by the trial court's reasoning. (*Williams v. Superior Court* (2013) 221 Cal.App.4th 1353, 1361.)

## I.     The Anti-SLAPP Motion

The Church defendants contend that their alleged conduct in failing to report sexual molestation crimes to the authorities and continuing (through transfers) to employ priests who have engaged in sexual abuse constitutes "protected activity" within the meaning of the anti-SLAPP statute. Plaintiff not only disputes this contention, but devotes a substantial portion of his briefing to arguing that other portions of the trial court's ruling should be reversed in his favor because (1) *none* of the Church defendants' conduct was "protected activity," and (2) his public nuisance and civil conspiracy claims have minimal merit. We decline to consider plaintiff's arguments for reversal because he did not appeal; as such, his arguments are not properly before us.[7] (*Estate of Powell* (2000) 83 Cal.App.4th 1434, 1439 [party

---

[7]     Those arguments—which fall into three broad categories— lack merit in any event. First, plaintiff asserts that the "gravamen" and "thrust" of his public nuisance claim is not

9

"protected activity" within the meaning of the anti-SLAPP statute because his claim is aimed at what the Church defendants are "*doing*" to harbor pedophilic priests or "failing to *do*" in protecting children; the allegations of affirmative misrepresentations and concealment, plaintiff continues, are merely *evidence* of the Church defendants' action and inaction. Although the distinction plaintiff draws between the conduct a claim is "based upon" and the conduct that "provide[s] evidentiary support for [a] claim" is a valid distinction (*Park*, *supra*, 2 Cal.5th at pp. 1063-1064; *Wilson*, *supra*, 7 Cal.5th at p. 884; *Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 621 (*Rand Resources*)), it is irrelevant here because (1) the conduct a claim is "based upon" is the conduct that causes injury (*Park*, at p. 1063; *Mission Beverage Co. v. Pabst Brewing Co., LLC* (2017) 15 Cal.App.5th 686, 698 (*Mission Beverage*)), and (2) plaintiff has alleged that the Church defendants' conduct in affirmatively misrepresenting and concealing its practices (as well as defaming victims) is what is causing the public nuisance (and, by extension, the civil conspiracy). What is more, a person's conduct in making affirmative misrepresentations or in concealing facts (that is, by not speaking) each constitutes "protected activity." (E.g., *Kronemyer v. Internet Movie Database Inc.* (2007) 150 Cal.App.4th 941, 947 (*Kronemyer*) ["the right of free speech" and "the right not to speak" is protected activity under the anti-SLAPP statute]; *Hecimovich v. Encinal School Parent Teacher Organization* (2012) 203 Cal.App.4th 450, 464 [false statements and defamation constitute protected activity under anti-SLAPP statute].) Second, plaintiff urges that his public nuisance and civil conspiracy claims have "minimal merit" sufficient to withstand the anti-SLAPP motion. However, it is well settled that a public nuisance claim may be prosecuted only by a person who has suffered a "special[] injur[y]" "different in kind from that suffered by the general public." (Civ. Code, § 3493; *Venuto v. Owens-Corning Fiberglass Corp.* (1971) 22 Cal.App.3d 116, 124, italics omitted; see generally, Rest.2d Torts,

10

who does not appeal cannot argue for reversal of trial court's ruling]; *Valentine v. Plum Healthcare Group, LLC* (2019) 37 Cal.App.5th 1076, 1090, fn. 4 [same].)

### A. *The anti-SLAPP statute, generally*

The anti-SLAPP statute "provides a procedure for weeding out, at an early stage, *meritless* claims arising from protected activity." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384.) When a party moves to strike a cause of action, or a portion thereof, under the anti-SLAPP statute, the trial court has two tasks. (*Barry v. State Bar of California* (2017) 2 Cal.5th 318, 321.) "First, the court must evaluate whether the moving party has 'made a threshold showing that the challenged cause of action arises from protected activity.'" (*Mission Beverage, supra*, 15 Cal.App.5th at pp. 697-698, quoting *Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056.) "Second, and only if the court concludes that the litigant has made this 'threshold showing,' the court must

---

§ 821C & com. b.) Here, the special injury plaintiff alleges is mental anguish that, due to his prior victimization, is greater than that of the general public; but it is of the same kind and hence insufficient to sustain a public nuisance (or derivative civil conspiracy) claim. (*Koll-Irvine Center Property Owners Assn. v. County of Orange* (1994) 24 Cal.App.4th 1036, 1040-1041 [so holding]; see *Doe 5 v. Diocese of Duluth* (Minn. Dist. 2014) 2014 Minn. Dist. LEXIS 14, *10-*12 [rejecting nearly identical public nuisance claim due to lack of special injury].) Lastly, plaintiff argues that it is possible to view the allegations in his complaint as asserting a viable claim for intentional infliction of emotional distress. But doing so would require us to re-write his complaint to allege a claim he does not allege, and such amendments are impermissible as a means of avoiding dismissal under the anti-SLAPP statute. (*Contreras v. Dowling* (2016) 5 Cal.App.5th 394, 411-412.)

11

examine whether the nonmoving party has . . . demonstrate[d] that [its] challenged cause[s] of action hav[e] 'minimal merit.'" (*Id.* at p. 698, quoting *Navellier v. Sletten* (2002) 29 Cal.4th 82, 94.)

The initial, threshold step of assessing whether a cause of action arises from protected activity "turns on two subsidiary questions: (1) What conduct does the challenged cause of action 'arise[] from'; and (2) is that conduct 'protected activity' under the anti-SLAPP statute?" (*Mission Beverage*, *supra*, 15 Cal.App.5th at p. 698.)

"A cause of action 'arises from' protected activity when the 'cause of action *itself*' is '*based on*' protected activity. [Citations.] Whether a cause of action is itself based on protected activity turns on whether its ""*principal thrust or gravamen*"" is protected activity—that is, whether the "'core injury-producing conduct'" warranting relief under that cause of action is protected activity." (*Ibid.*, quoting *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78; *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1114; *Colyear v. Rolling Hills Community Assn. of Rancho Palos Verdes* (2017) 9 Cal.App.5th 119, 134; see also *Park*, *supra*, 2 Cal.5th at p. 1063; *Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 192.)

As pertinent here, the anti-SLAPP statute generally defines "protected activity" to include "any . . . conduct in furtherance of the exercise of the [federal or California] . . . constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e)(4); see also *id.*, subd. (b)(1).) Also as pertinent here, whether an issue is "of public interest" looks to "whether the subject of the speech or activity 'was a person or entity in the public eye' or 'could affect

12

large numbers of people beyond the direct participants,' [citations]; and whether the activity 'occur[red] in the context of an ongoing controversy, dispute or discussion' [citation]." (*FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133, 145 (*FilmOn.com*); *Rand Resources, supra*, 6 Cal.5th at p. 621.) Whether a party's conduct is "in connection" with that issue of public interest turns on whether "it contributes to—that is, 'participat[es]' in or furthers—[the] public conversation on the issue." (*FilmOn.com*, at pp. 151-152; *Wilson, supra*, 7 Cal.5th at p. 900.)

### B. *Analysis*

Because the trial court has already determined that plaintiff's public nuisance and civil conspiracy claims lack minimal merit (and plaintiff has not appealed that determination), and because those claims are both "based on" the Church defendants' alleged conduct in failing to report sexual molestation crimes to the proper authorities and in continuing to employ priests who engaged in sexual molestation, the Church defendants' argument on appeal boils down to whether those two types of conduct—that is, failing to report sexual molestation crimes to the proper authorities and continuing to employ priests who have engaged in sexual molestation—constitute "conduct in furtherance of the exercise of the . . . constitutional right of free speech in connection with an . . . issue of public interest."

They do not.

The failure to report sexual molestation crimes to the proper authorities is not conduct in furtherance of the constitutional right to speech—and hence not "protected activity" within the meaning of the anti-SLAPP statute—because it constitutes a crime in California whose commission is

13

conclusively established in this case.  Except for clergy who acquire their knowledge in the course of a penitential communication, members of the clergy have since 1997 been required by law to report any known or reasonably suspected "child abuse or neglect" to local law enforcement and/or the "county welfare department."  (Pen. Code, §§ 11166, subd. (a), 11165.7, subd. (a)(32) [clergy are "mandated reporters" unless they acquire their knowledge from a penitential communication], 11166, subd. (d)(1) [same]; Stats. 1996, ch. 1081, § 3.5; *Conley v. Roman Catholic Archbishop* (2000) 85 Cal.App.4th 1126, 1131 [discussing Legislature's addition of clergy to list of mandated reporters].)  The failure to report is *itself* a misdemeanor.  (Pen. Code, § 11166, subd. (c); cf. *Monaghan v. Roman Catholic Diocese of Rockville Ctr.* (N.Y. App. Div. 2018) 165 A.D.3d 650, 653 [in New York, clergy are not "mandatory reporters"].)  It is akin to misprision of a felony and, as such, "'generally falls outside the protections of the First Amendment.'"  (*United States v. Baumgartner* (6th Cir. 2014) 581 Fed. Appx. 522, 530; see generally *Branzburg v. Hayes* (1972) 408 U.S. 665, 697 [noting that "concealment of crime" is not "afford[ed] . . . First Amendment protection"].)  Although the mere allegation that conduct that is otherwise "protected activity" is unlawful or illegal does not, by itself, deprive the conduct of its "protected activity" status under the anti-SLAPP statute (*Collier v. Harris* (2015) 240 Cal.App.4th 41, 53-54), that conduct *does* lose its "protected activity" status "when the defendant concedes or the evidence conclusively establishes the defendant's conduct is illegal as a matter of law" (*id.* at p. 54; *Flatley v. Mauro* (2006) 39 Cal.4th 299, 320).  Here, it is undisputed that a majority of the Church defendants for the first time publicly disclosed the names

14

of priests credibly accused of sexual abuse after this lawsuit was filed; this first-time disclosure strongly suggests that those defendants had not previously disclosed those names and crimes, including to the authorities in violation of California law. The Church defendants did not, in their reply, dispute the fact that they had not disclosed the priests on these lists to law enforcement. Thus, whether it is deemed to be conceded or conclusively established, the Church defendants' failure to report the prior crimes to the pertinent authorities is illegal as a matter of law and, thus, not "protected activity" within the meaning of the anti-SLAPP statute.

Continuing to employ priests who have engaged in sexual abuse through clandestine personnel transfers is also not "protected activity" within the meaning of the anti-SLAPP statute because the Church defendants' behind-the-scenes employment and staffing decisions are typically unrelated to free speech and, in this case, in no way contributed to the public debate on the issue of sexually abusive priests. (*McConnell v. Innovative Artists Talent & Literary Agency, Inc.* (2009) 175 Cal.App.4th 169, 176-177 [conduct in transferring employees does not constitute "protected activity"]; *Wilson*, *supra*, 7 Cal.5th at p. 896 [conduct in making "staffing decision[s]" typically not "protected activity"]; cf. *Wilson*, at p. 898 [conduct in terminating employee may constitute "protected activity" when employer is a news agency and termination was designed to affect the employer's reputation with respect to the content it publishes].)

Although the Church defendants offer no argument regarding why the inter-church transfers constitute protected activity, they offer three reasons why not reporting sex crimes does. First, they assert that their refusal to report sexual abuse

15

to the authorities falls within their constitutionally protected "right not to speak." (*Kronemyer*, *supra*, 150 Cal.App.4th at p. 947.) This assertion ignores that even constitutionally protected speech (or silence) is unprotected where, as here, it is concededly or conclusively illegal. Second, the Church defendants contend that the trial court made no express finding that their conduct was illegal. This is irrelevant, as we are reviewing the issue de novo and are not bound by the trial court's findings or lack of findings. Lastly, the Church defendants argue that the trial court erred in making a "normative evaluation" of the "substance of the speech" when it ruled that "there is no right to conceal sexual assaults from the authorities." Although the Church defendants are correct that what matters in assessing whether conduct constitutes "protected activity" is the conduct itself and not its motive (*Wilson*, *supra*, 7 Cal.5th at pp. 888-889), the conduct of not reporting the sexual assaults on children is illegal as a matter of law regardless of motive. As such, it is not "protected activity."

In sum, the trial court properly ruled that the allegations regarding the Church defendants' failure to report crimes and transfer of priests did not constitute "protected activity," and properly allowed plaintiff's lawsuit to move forward to the extent his public nuisance and civil conspiracy claims are based on that unprotected activity.

## II.    Dismissal of Lawsuit

Because some of the allegations upon which plaintiff's public nuisance and civil conspiracy claims are based involve activity that is not protected by the anti-SLAPP statute, that statute does not empower the trial court to dismiss those claims in their entirety. (§ 425.16, subd. (b)(1); *Wilson*, *supra*, 7 Cal.5th

16

at p. 881 [where "plaintiff's claims arise in limited part—though not in whole—from protected activity," defendant is "entitled to a determination of whether *those limited portions* . . . have sufficient potential merit to proceed"], italics added.)

The Church defendants nevertheless urge that the trial court's finding that plaintiff's public nuisance and civil conspiracy claims lack merit warrants dismissal of those claims in their entirety. For support, they cite *Roberts v. Los Angeles County Bar Assn.* (2003) 105 Cal.App.4th 604, 615-616 (*Roberts*), *Thomas v. Quintero* (2005) 126 Cal.App.4th 635, 641-642 (*Thomas*), *Manchel v. County of Los Angeles* (1966) 245 Cal.App.2d 501 (*Manchel*), and *Horacek v. Smith* (1948) 33 Cal.2d 186 (*Horacek*). These cases are inapt. *Roberts* and *Thomas* dismissed a plaintiff's entire complaint under the anti-SLAPP statute after determining that (1) they *disagreed* with the trial court's finding that the plaintiff's claims were not based on "protected activity," and (2) those claims lacked minimal merit. Here, we *agree* with the trial court's finding that portions of plaintiff's claims are not based on "protected activity," so the anti-SLAPP statute gives us no warrant to proceed to the second step as to those portions. And *Manchel* and *Horacek* have nothing to do with the anti-SLAPP statute at all; indeed, they pre-dated it by several decades.

That being said, the trial court's finding that plaintiff's public nuisance and civil conspiracy claims lack merit effectively means that the Church defendants would, on remand, prevail on a motion for judgment on the pleadings. A motion for judgment on the pleadings is appropriate when "'the face of the complaint'" and "'facts capable of judicial notice'" demonstrate that the complaint does not "state facts sufficient to constitute a cause of

17

action." (§ 438, subds. (c)(1)(B)(ii), (d); *Hart v. Darwish* (2017) 12 Cal.App.5th 218, 224.) The trial court's determination that plaintiff lacks standing to pursue the public nuisance claim dooms both that claim and his wholly derivative civil conspiracy claim, warranting a grant of judgment on the pleadings. To avoid having the trial court engage in the idle act of entertaining such a motion on remand when its outcome is a foregone conclusion, we solicited supplemental briefing from the parties on this issue and, after considering those arguments, direct the trial court to dismiss these claims in full. (*Stafford v. People* (1956) 144 Cal.App.2d 79, 82 ["It would be an idle act to remand the case to the trial court for further proceedings when . . . plaintiff could not in any event prevail through any further proceedings in that court"]; *Ena North Beach, Inc. v. 524 Union Street* (2019) 43 Cal.App.5th 195, 215 [remand unnecessary where "the result of a remand is a foregone conclusion"].)

In his supplemental brief, plaintiff (1) objects that the trial court's finding of minimal merit applies only to the portions of his claims found to constitute "protected activity," (2) acknowledging the inevitable outcome of a motion for judgment on the pleadings on remand, argues that it constitutes a "procedural shortcut" that violates due process, and (3) asserts that he would amend his complaint, although did not indicate how he would do so until asked at oral argument. Plaintiff's first two arguments lack merit. The defects the trial court identified regarding plaintiff's public nuisance and civil conspiracy boil down to his lack of standing to bring the public nuisance claim (which means there is no underlying tort to support his civil conspiracy claim); these defects doom the entirety of those claims. Plaintiff is not being denied due process. The procedure we are using is amply

18

supported by the precedent cited above, and does not deny plaintiff notice or an opportunity to be heard, which are the essence of due process (*Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 212); indeed, we specifically notified plaintiff of this potential resolution of the appeal and solicited his input. Lastly, plaintiff has suggested that he could amend his complaint to state a claim for emotional distress. Because the Church defendants have not explained to us why such a claim is not viable as a matter of law (e.g., *Komorsky v. Farmers Ins. Exchange* (2019) 33 Cal.App.5th 960, 971 ["[l]eave to amend . . . is properly denied . . . if . . . the proposed amendment would not establish a basis for liability as a matter of law"]), the rules favoring liberal amendment of pleadings dictate a remand to give plaintiff the opportunity to so amend his complaint. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 970-971 ["'great liberality should be exercised in permitting a plaintiff to amend his complaint'"]; see also § 472c [request to amend may be made for first time on appeal from demurrer ruling].) By granting plaintiff leave to amend, however, we take no position on the viability of his proffered claim, which is to be examined by the trial court in the first instance.

Because our dismissal of the causes of action currently pled in plaintiff's complaint is not based on the anti-SLAPP statute, it does not affect whether the Church defendants are entitled to attorney fees under the statute.

19

# DISPOSITION

The order is affirmed in part, and reversed in part with directions. The trial court is directed to dismiss the plaintiff's public nuisance and civil conspiracy claims in their entirety (as well as plaintiff's private nuisance claim, which he has voluntarily abandoned on appeal), and to grant plaintiff leave to amend. Each party is to bear its own costs.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.

HOFFSTADT


We concur:


_____, P. J.

LUI


_____, J.

CHAVEZ