[No. B193613. Second Dist., Div. Four. Apr. 13, 2007.]

DAVID E. KRONEMYER, Plaintiff and Appellant, v.
INTERNET MOVIE DATABASE INC., Defendant and Respondent.

## COUNSEL

David E. Kronemyer, in pro. per., for Plaintiff and Appellant.

Preston Gates & Ellis, Kathleen O. Peterson and Luke G. Anderson for Defendant and Respondent.

## OPINION

**EPSTEIN, P. J.**—David E. Kronemyer appeals from the trial court's order granting a Code of Civil Procedure section 425.16[1] special motion to strike his complaint for declaratory relief. We find no error and affirm.

---

[1] All statutory references are to the Code of Civil Procedure.

## FACTUAL AND PROCEDURAL SUMMARY

Appellant claims he was an executive producer of the motion pictures My Big Fat Greek Wedding (IFC Films 2002) and Wishcraft (2002) and the television production *Stand and Be Counted.* He complains that respondent's Web site, <http: //www.IMDb.com/> (as of Apr. 13, 2007), does not attribute production credits to him for these productions. According to appellant, he followed the procedure established by respondent to correct credit mistakes on the site, but received no response to his queries. This action for declaratory relief followed. Appellant asks the court to "require Defendants to identify Plaintiff as an Executive Producer of the motion picture 'My Big Fat Greek Wedding;' a Producer of the motion picture 'Wishcraft;' and a Producer of the television production 'Stand and Be Counted.' "

Respondent filed an anti-SLAPP (strategic lawsuit against public participation) special motion to strike the complaint under section 425.16 and sought an award of attorney fees and costs. It argued that the case comes within the anti-SLAPP statute and that appellant cannot show probability of prevailing on the merits.

Giancarlo Cairella, customer service manager for respondent, provided a declaration in support of the motion. He explained that respondent is an Internet Web site providing a database of information concerning films, television, actors, and other industry professionals. The database includes approximately 400,000 motion pictures and television shows, as well as entertainment news, biographies, reviews, and a message board and chat room. Guest columnists from the film industry answer questions from the public regarding the filmmaking process. Thirty-five million people access the Web site each month.

The Internet Movie Database Inc. (IMDb), Web site has "filmography" pages which list the film credits of industry professionals. According to Cairella, the Web site states in bold letters: "Whenever possible, and with a few exceptions, [IMDb] lists credits **exactly as they appear on screen.**" The Web site warns that respondent reserves the right to "reject/delete information at any time for any reason, especially if [IMDb is] unable to verify it." Copies of the Web site pages with these rules were attached to the motion. Cairella's declaration explained: "The website also features an 'update' function by which industry professionals can submit proof of their on-screen credits so that IMDb can add such credits to their filmography pages. Part of the reason behind these policies is to avoid getting mired in the frequent disputes among industry professionals and studios regarding who should and should not be included in the credits."

Cairella said that in May 2004, respondent received an update request on the Web site from appellant requesting that he be listed on the Web site as a producer for My Big Fat Greek Wedding. Respondent reviewed the actual screen credits for the film, and found that appellant was not listed as a producer. "Accordingly, [appellant] is not credited as a producer for this film on IMDb's website." Cairella declared that appellant had made no submission to IMDb about either Wishcraft or *Stand and Be Counted* and that he is not listed on the Web site as a producer for either production. Nathan Levoit, a paralegal for respondent's counsel, rented the movie Wishcraft and reviewed the opening and ending credits. Appellant was not listed in the credits. Nor does the DVD jacket for the picture list him as a producer.

Appellant opposed the motion to strike on the ground that his lawsuit does not fall within the ambit of section 425.16. He attached documents to his declaration to support his status as an executive producer on My Big Fat Greek Wedding. According to appellant, he left Gold Circle Films, which was one of the production companies involved in the film, "and, as a result, [his] name did not appear on subsequent prints." Appellant declared that he had similar documentation regarding Wishcraft and *Stand and Be Counted* but did not submit it to the court. He said that he had forwarded his documentation regarding his status as a producer to respondent, but received no response.

Respondent objected to appellant's opposition as untimely and filed a reply. At oral argument, appellant took the position that his action is outside the anti-SLAPP statute because the gravamen of his complaint is respondent's silence in response to his queries, which he argues is not protected speech. The trial court adopted its tentative ruling granting the motion to strike. In that decision, the court ruled that respondent's conduct was in furtherance of its constitutional right of free speech in connection with a public issue, within the meaning of section 425.16, subdivision (e)(3). It concluded that the Web site is a public forum visited by 35 million people each month. The trial court ruled that the listing of credits for My Big Fat Greek Wedding, a very successful motion picture, is a matter of considerable public interest. The court concluded that appellant had not met his burden of establishing a probability of success on the merits because he submitted no evidence to substantiate his claims. Appellant was ordered to pay respondent's attorney fees of $6,270 plus costs pursuant to section 425.16, subdivision (c). This appeal followed.

## DISCUSSION

■ Under section 425.16, a cause of action asserted "against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in

connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)

When determining whether to grant an anti-SLAPP motion, the trial court engages in a two-step process. "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one 'arising from' protected activity. (§ 425.16, subd. (b)(1).) If the court finds such a showing has been made, it then must consider whether the plaintiff has demonstrated a probability of prevailing on the claim." (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 76 [124 Cal.Rptr.2d 519, 52 P.3d 695]; see *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 66–67 [124 Cal.Rptr.2d 507, 52 P.3d 685].) We review the trial court's determination of each step de novo. (*Governor Gray Davis Com. v. American Taxpayers Alliance* (2002) 102 Cal.App.4th 449, 456 [125 Cal.Rptr.2d 534].)

A. *Cause of Action Arising from Protected Activity*

■ The Supreme Court in *City of Cotati v. Cashman, supra,* 29 Cal.4th 69, explained the first step of the process: "[T]he statutory phrase 'cause of action . . . arising from' means simply that the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech. [Citation.] In the anti-SLAPP context, the critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech." (*Id.* at p. 78.) The court went on to explain that a defendant meets the threshold burden " 'by demonstrating that the act underlying the plaintiff's cause fits one of the categories spelled out in section 425.16, subdivision (e) . . . .' " (*Ibid.*)

Acts " 'in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue,' " under section 425.16, subdivision (e) include "(3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

■ Appellant argues that there was no act in furtherance of the right of free speech as required by section 425.16, subdivision (b)(1) because respondent did nothing in response to his request to correct the credits.[2] He characterizes his lawsuit as based on *inaction*—a failure to speak—rather than conduct or speech. Based on the same reasoning, he also argues that there was no act by respondent that triggered section 425.16. These arguments have no merit because the gravamen of the lawsuit is the content of respondent's Web site: the producer credits for the films at issue. As we explain, the listing of credits on respondent's Web site is an act in furtherance of the right of free speech protected under the anti-SLAPP statute. It is, of course, well established that the constitutional right of free speech includes the right not to speak. (See *Gerawan Farming, Inc. v. Lyons* (2000) 24 Cal.4th 468, 491 [101 Cal.Rptr.2d 470, 12 P.3d 720]; *ARP Pharmacy Services Inc. v. Gallagher Bassett Services, Inc.* (2006) 138 Cal.App.4th 1307, 1314 [42 Cal.Rptr.3d 256], & cases cited.)

■ In *City of Cotati v. Cashman, supra,* 29 Cal.4th 69, the cause of action at issue was for declaratory relief. The Supreme Court observed that " '[t]he fundamental basis of declaratory relief is the existence of an *actual, present controversy* over a proper subject.' [Citation.]" (*Id.* at p. 79.) Here the controversy is over the content of respondent's Web site, which constitutes written statements within the meaning of section 425.16, subdivision (e)(3). Appellant's argument that his action is based on respondent's "inactivity" in response to his complaints is fallacious. The issue is the content of the Web site, not respondent's response to appellant's complaints. This is borne out by appellant's prayer for relief, in which he asks the trial court to require respondent to change the content of the Web site to identify him as a producer on the projects at issue. Respondent's "act" was its initial decision not to list appellant as a producer and its subsequent decision not to do so after reviewing appellant's communications and examining his claim.

Appellant cites *Schoendorf v. U.D. Registry, Inc.* (2002) 97 Cal.App.4th 227 [116 Cal.Rptr.2d 313] for the proposition that his action is not a SLAPP suit. In that case, a tenant unsuccessfully sought to correct information compiled by a service which provided information to landlords. The defendant brought an anti-SLAPP motion, arguing that the information it compiled was from court records. The defendant argued plaintiff's action was within the scope of section 425.16, subdivision (e)(2) because it was based on dissemination of matters in the public record and because the report constituted a discussion

---

[2] Appellant cites 47 United States Code section 230(c)(1) which provides: "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." He does not explain how this statute is relevant to his claim that respondent did not engage in speech that comes within the anti-SLAPP statute. We find no relevance to the issues before us.

related to litigation. On appeal from the order granting the motion, the plaintiff argued that the defendant did not make the requisite threshold showing, but cited no authority and did not elaborate on the assertion. The Court of Appeal assumed that the defendant had shown that the action came within the anti-SLAPP statute and turned to the probability of prevailing. (97 Cal.App.4th at pp. 237–238.) *Schoendorf* does not support appellant's argument that this action does not come within the ambit of the anti-SLAPP statute.

Appellant also argues that any speech by respondent was not in connection with a public issue or an issue of public interest as required by section 425.16. In support of this argument, he contends that respondent's Web site constitutes unprotected commercial speech because respondent earns money from the Web site.

In support of his commercial speech argument, appellant cites two cases. One, *Kasky v. Nike, Inc.* (2002) 27 Cal.4th 939 [119 Cal.Rptr.2d 296, 45 P.3d 243], does not involve a special motion to strike under section 425.16 and therefore is not helpful to appellant on the issue of whether this action comes within the anti-SLAPP statute. In the second case, *Nagel v. Twin Laboratories, Inc.* (2003) 109 Cal.App.4th 39 [134 Cal.Rptr.2d 420], the defendant manufactured and marketed nutritional and dietary supplements. The plaintiff sued for violations of California's unfair competition laws and the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.). The trial court in *Nagel* denied the defendant's motion to strike the complaint pursuant to section 425.16. The appellate court affirmed, finding no protection under section 425.16 for a list of ingredients found on the defendant's product labels and on a Web site. (*Nagel, supra*, at p. 47.) The court placed heavy reliance on the fact that the speech at issue did nothing more than list a product's ingredients. (*Ibid.*)

The *Nagel* court distinguished *DuPont Merck Pharmaceutical Co. v. Superior Court* (2000) 78 Cal.App.4th 562 [92 Cal.Rptr.2d 755], which addressed Internet bulletins and marketing materials regarding a widely ingested drug. In *DuPont*, the court concluded that the conduct which gave rise to the lawsuit was in furtherance of the defendant's free speech rights and concerned a public issue. (*DuPont, supra*, at pp. 567–568.) The *Nagel* court observed that the advertising in *DuPont* was inextricably intertwined with speech providing medical information to the consuming public and the medical profession, and with speech furthering the political lobbying activities of the defendant.

Here, the listing of credits on respondent's Web site is informational rather than directed at sales. According to the evidence submitted in support of the

motion, it provides a message board and chat room for members of the public as well as listing of credits for 400,000 movies and television shows. The site is visited by 35 million people each month. We conclude that the credit listings on respondent's Web site are not commercial speech and are protected by section 425.16. If appellant's position that the prospect of some financial benefit from a publication places the material in the area of "commercial speech," it would include virtually all books, magazines, newspapers, and news broadcasts. There is no authority for so sweeping a definition.

Appellant cites *Zhao v. Wong* (1996) 48 Cal.App.4th 1114 [55 Cal.Rptr.2d 909] for the proposition that the public interest requirement was not met. The discussion of the scope of the anti-SLAPP statute in *Zhao* was superseded by 1997 amendments to section 425.16. (*Integrated Healthcare Holdings, Inc. v. Fitzgibbons* (2006) 140 Cal.App.4th 515, 523 [44 Cal.Rptr.3d 517], quoting *Sipple v. Foundation for Nat. Progress* (1999) 71 Cal.App.4th 226, 236 [83 Cal.Rptr.2d 677] [" 'the Senate Judiciary Committee expressly amended section 425.16 to mandate a broad interpretation of the statute in reaction to the over-narrow interpretation of *Zhao v. Wong*' "]; see also *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106 [81 Cal.Rptr.2d 471, 969 P.2d 564] [disapproving *Zhao*].)

"The 'public interest' component of section 425.16, subdivision (e)(3) and (4) is met when 'the statement or activity precipitating the claim involved a topic of widespread public interest,' and 'the statement . . . in some manner itself contribute[s] to the public debate.' [Citation.]" (*Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.* (2005) 129 Cal.App.4th 1228, 1246 [29 Cal.Rptr.3d 521].) The evidence in support of the anti-SLAPP motion established that 35 million people visit respondent's Web site each month. Although appellant's complaint concerns the credits to three projects, according to the uncontroverted evidence submitted by respondent, appellant did not make submissions to respondent concerning either Wishcraft or *Stand and Be Counted*. The remaining project, My Big Fat Greek Wedding was described by appellant in his declaration as "a successful independent motion picture."

On this record, we conclude that the motion picture My Big Fat Greek Wedding was a topic of widespread public interest. The declaration submitted by Giancarlo Cairella, respondent's customer service manager, states that respondent lists credits as they appear on screen and that respondent reserves the right to reject information "especially if [respondent is] unable to verify it." He explained: "Part of the reason behind these policies is to avoid getting mired in the frequent disputes among industry professionals and studios regarding who should and should not be included in the credits."

■ The California Supreme Court held that Web sites accessible to the public are "public forums" for the purposes of the anti-SLAPP statute. (*Barrett v. Rosenthal* (2006) 40 Cal.4th 33, 41, fn. 4 [51 Cal.Rptr.3d 55, 146 P.3d 510].) " 'Cases construing the term "public forum" as used in section 425.16 have noted that the term "is traditionally defined as a place that is open to the public where information is freely exchanged." [Citation.] "Under its plain meaning, a public forum is not limited to a physical setting, but also includes other forms of public communication." ' (*ComputerXpress*[, *Inc. v. Jackson* (2001)] 93 Cal.App.4th 993, 1006 [113 Cal.Rptr.2d 625].) Statements on SHAC USA's Web site are accessible to anyone who chooses to visit the site, and thus they 'hardly could be more public.' (*Wilbanks v. Wolk* [(2004)] 121 Cal.App.4th [883,] 895 [17 Cal.Rptr.3d 497]; see *ComputerXpress*, at p. 1007.)" (*Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.*, *supra*, 129 Cal.App.4th at p. 1247.) We are satisfied that respondent's Web site constitutes a public forum.

■ We conclude that appellant's action is within the ambit of section 425.16, subdivision (e)(3) and (4). We turn to the second step of the anti-SLAPP analysis.

## B. *Probability of Prevailing*

In the trial court, appellant argued only the first step of the analysis by contending that his action does not come within the anti-SLAPP statute. He did not attempt to establish his probability of prevailing on the merits. On appeal, he also contends that the trial court erred in reaching the second step of the analysis. He asserts: "It appears from its Opinion that the Superior Court did not disagree with the proposition Plaintiff could state a valid cause of action for declaratory relief under Cal. C. of Civ. Proc. § 1060. It is not even necessary to cite one of the thousands of cases holding that such a cause of action is legally favored, serves a salutary purpose, facilitates a prompt adjudication of rights, etc. Furthermore, Plaintiff more than satisfied the requisites for a *prima facie* case. This evidence included not only extracts from contracts wherein Appellant was named as an Executive Producer of, in this case, 'My Big Fat Greek Wedding;' but also, evidence regarding IMDB's own business practices."

Appellant goes on to cite respondent's procedure for adding new credits to a filmography, and claims that respondent does not "*indicate that it will exercise any administrative or bureaucratic discretion* in adding this information." We note that the declaration of Giancarlo Cairella included copies of a page from respondent's Web site that warns that it has the right to "reject/delete information at any time for any reason, especially if we are unable to verify it." .

Appellant argues, without citation to the record, that respondent "frequently lists individuals in connection with films when their names and functions *do not appear* on theatrical prints or DVDs of the film. The entry for 'My Big Fat Greek Wedding' alone sets forth an astonishing *16 such entries* . . . and, we suspect discovery will show there are *thousands more* in [respondent's] database." In the next paragraph, appellant "submits this evidence establishes at least the requisites of a *prima facie* case."

In order to establish a probability of prevailing on his claim, appellant was required to demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if his evidence is credited. (*Vogel v. Felice* (2005) 127 Cal.App.4th 1006, 1017 [26 Cal.Rptr.3d 350].)

" '[T]he salutary purpose of the declaratory relief provisions is to permit a prompt adjudication of the respective rights and obligations of the parties in order to relieve them from uncertainty and insecurity with respect to rights, status and other legal relations. . . . It enables a party to get a prompt adjudication without a dispute over the damages suffered.' " (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 898 [123 Cal.Rptr.2d 432, 51 P.3d 297], quoting *Lortz v. Connell* (1969) 273 Cal.App.2d 286, 301 [78 Cal.Rptr. 6].) Appellant cites no authority supporting a claim that he had any rights or legal relationship with respect to respondent. Respondent expressly reserves the right to reject any proffered listing for the Web site if it cannot be verified. We find no basis to conclude that respondent has any duty to appellant on this record.

Appellant failed to present any evidence to establish that he is entitled to declaratory relief requiring respondent to list him as a producer on the projects at issue. He presented no evidence as to either Wishcraft or *Stand and Be Counted*. As to My Big Fat Greek Wedding, appellant attached two documents to his declaration purporting to identify him as an executive producer. The first is a "Loan and Security Agreement" dated September 2000 between Big Wedding LLC and The Lewis Horowitz Organization. Page 30 of that document states that the movie would be executive produced by appellant and others. This does not establish that appellant was entitled to be listed as an executive producer on the finished film.

Appellant also attached exhibit B to his declaration, which he described as a letter to him from Lions Gate Films, dated September 27, 2000. He said that page 1, paragraph No. 1 of the letter identified him as an executive producer. The exhibit B to appellant's declaration in appellant's appendix does not have a page 1. The copy in the record begins with page 3.

The evidence submitted by appellant was not sufficient to satisfy his burden of establishing he had a probability of prevailing on the merits of his claim for declaratory relief. Based on the record before us, respondent based its credit listing for the films as released, as it was entitled to do, and it was unlikely that appellant would prevail on the merits of his claim. Respondent's special motion to strike under section 425.16 was properly granted.

## DISPOSITION

The order striking appellant's complaint is affirmed. Respondent is to have its costs on appeal

Manella, J., and Suzukawa, J., concurred.