Filed 2/1/23  South Coast v. Ag-Weld CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| SOUTH COAST, INC.,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>AG-WELD, INC.,<br><br>    Defendant and Appellant. | F082612<br><br>(Super. Ct. No. BCV-20-102604)<br><br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kern County.  Thomas S. Clark, Judge.

Darling & Wilson, Joshua G. Wilson, Anton H. Labrentz, Nathaniel J. Oleson, and Darren J. Bogie, for Defendant and Appellant.

Atkinson, Andelson, Loya, Ruud & Romo, Hal G. Block, for Plaintiff and Respondent.

-ooOoo-

South Coast, Inc. sued appellant Ag-Weld, Inc. for breach of contract and interference with prospective business advantage, alleging Ag-Weld failed to submit South Coast's request for reimbursement of relocation expenses, along with supporting invoices, to the California High-Speed Rail Authority (CHSRA) in accordance with the parties' contract. Ag-Weld filed a special motion to strike under California's anti-SLAPP statute, Code of Civil Procedure section 425.16 (section 425.16), contending the alleged failure to submit the documents to a government body qualified as protected petitioning activity. The trial court denied Ag-Weld's motion, stating that the failure to submit the documents was not protected activity.

Ag-Weld, as the moving party, had the burden of demonstrating the challenged causes of action arose from an act or acts "in furtherance of [Ag-Weld's] right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." (§ 425.16, subd. (b)(1).) Section 425.16, subdivision (e) defines the quoted statutory language by specifying four types of activity protected by the statute. The first three types of activity involve a "written or oral statement or writing made" by the moving party. (§ 425.16, subd. (e)(1)-(3).) We conclude the failure to submit the documents does not qualify as a "written or oral statement" or a "writing" for purposes of the statute.

The anti-SLAPP statute's so-called catchall provision defines the fourth type of protected activity as "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e)(4).) We interpret the phrase "any other conduct" to include both acts and omissions and, therefore, conclude the failure to submit the documents qualifies as "conduct" for purposes of the catchall provision. We further conclude the failure to submit documents is not protected activity because Ag-Weld has not shown that the alleged failure was done "in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e)(4).)

2.

We therefore affirm the order denying the anti-SLAPP motion.

**FACTS**

Plaintiff South Coast is a California corporation licensed as a contractor by the State of California. Its primary business is acting as a general contractor in the construction of structures and the provision of services related to relocation projects such as those associated with the extension of the California High-Speed Rail system. Raymond Miller is South Coast's president.

Defendant Ag-Weld is an aftermarket specialty farm tool manufacturer. Jeff Mehlberg is the owner, president, and chief financial officer of Ag-Weld. In 2015, Ag-Weld's facility was located on G Street in Wasco. Ag-Weld leased the property from its owner, Leon Mahan.

On September 2, 2015, CHSRA made an offer to purchase Mahan's property, through eminent domain, for purposes of expanding the High-Speed Rail system. On September 14, 2015, CHSRA sent Ag-Weld a notice of eligibility stating that, as the property's occupant, "you are entitled to certain benefits under the [CHSRA's] Relocation Assistance Program." The notice also advised: "It is important that you understand the conditions described below which must be met before any payments can be made."

The notice stated a relocating business could be paid the actual expenses of moving and reestablishment determined by CHSRA to be reasonable and necessary. Alternatively, the business could be paid a fixed amount. The notice provided a detailed list of the moving costs and reestablishment expenses that would be considered by CHSRA.

CHSRA assigned Overland, Pacific & Cutler, Inc. (processing agent) to work with Ag-Weld to administer Ag-Weld's claims for relocation assistance. The processing agent's responsibilities included (1) advising the business about the claims process,

3.

which is highly complex, (2) reviewing plans, expenses, and supporting documents, and (3) determining eligibility.

Miller's January 20, 2021 declaration states that in April 2016 he was retained by Mehlberg to assist Ag-Weld with its relocation. For purposes of this opinion, we describe only two aspects of the relationship between South Coast and Ag-Weld.

*Contract—New Building*

First, Ag-Weld hired South Coast to be the general contractor for the construction of Ag-Weld's new manufacturing building and office located on North F Street in Wasco. In May 2017, Ag-Weld and South Coast entered into an AIA A111 1987 edition of a standard form agreement between owner and contractor. A copy of that agreement is attached to South Coast's complaint. Disputes arising from that relationship are not the subject of Ag-Weld's anti-SLAPP motion.

*Contract—Relocation Services*

Second, Ag-Weld hired South Coast to provide professional services in connection with Ag-Weld's move and its claims for relocation assistance from CHSRA. In July 2016, South Coast prepared a proposal for its relocation services, quoting a cost of $32,400 at $135.00 per hour. In October 2016, Ag-Weld agreed to (1) assign the amount of $32,400 to South Coast and (2) submit a claim to CHSRA. The claim was processed and $32,400 was paid to South Coast in November 2016.

After meetings with the processing agent, South Coast developed a complex relocation project manual setting forth in detail the costs associated with the Ag-Weld relocation. On December 6, 2016, Laura Kane, a relocation consultant with the processing agent, met with South Coast and was given a copy of the project manual, which included a scope of work, certified inventory, construction specifications, equipment layout, electrical requirements, and a move schedule with phases. The estimated relocation costs were $5,527,558 and included utility service and connections in the new building, moving expenses, modifications and certifications of equipment,

4.

trade fixtures, equipment and specialty items, and new equipment to replace old equipment that could not be recertified to current standards.

While CHSRA and the processing agent were reviewing the project manual, Melberg and Miller signed a one-page document addressing Ag-Weld's relocation and South Coast's provision of relocation services. The document was titled "CONTRACT PROPOSAL," dated December 20, 2016, and on South Coast's letterhead. It listed six "Qualifications" and six "Terms." The fifth qualification stated: "All funds are to be paid by CHSRA." Another qualification stated: "All payments shall be made directly to **South Coast, Inc.**" The sixth term stated: "Costs of relocation tasks as approved by CHSRA plus our normal [profit and overhead]." This document forms part of the agreement regarding relocation services that South Coast alleges was breached by Ag-Weld. Ag-Weld's anti-SLAPP motion challenged South Coast's cause of action alleging a breach of the contract regarding relocation services.

On January 30, 2017, CHSRA denied eligibility and payment of the costs set forth in the project manual, and subsequent meetings were held to address the project's scope and cost. In a letter dated February 27, 2017, the processing agent advised Ag-Weld that (1) South Coast had been told "the relocation program is a reimbursement, spend-to-get program, based on actual and reasonable expenses"; (2) relocation expenses had to be separated from costs for new or general construction; (3) an explanation was needed for how relocation costs could total over $5.5 million when Ag-Weld was moving into a new facility built specifically for it; and (4) the information provided to date did not justify a relocation payment. The letter stated that if Ag-Weld did not agree with the eligibility determination, it had the right to appeal. A relocation assistance appeal form was attached to the letter.

Subsequently, CHSRA, Ag-Weld and South Coast entered into a memorandum of understanding dated March 9, 2017. CHSRA agreed to make an advance of $450,000 "to reduce any potential hardship to Ag-Weld and to accelerate Ag-Weld's relocation." The

5.

memorandum referred to the preparation of a draft relocation plan, which would include a schedule for the move and a list of necessary tasks and their probable costs. A copy of the draft plan was to be provided to CHSRA.

On August 25, 2017, CHSRA and Ag-Weld entered into another memorandum of understanding. It addressed a second request for an advance by Ag-Weld. Among other things, Ag-Weld agreed to provide an accounting of how the first advance of $450,000 was spent.

## PROCEEDINGS

In November 2020, South Coast filed a complaint against Ag-Weld. Its first and second causes of action alleged breach of contract. The third through fifth causes of action alleged common counts for quantum meruit, account stated, and open book account. The sixth and final cause of action was for interference with prospective business advantage.

*Allegations in the Challenged Claims*

The complaint alleges that Ag-Weld retained South Coast to provide professional services related to Ag-Weld's relocation process. The one-page "CONTRACT PROPOSAL," dated December 20, 2016, and signed by Miller and Mehlberg was attached to the complaint. The complaint described the contract for relocation services by alleging:

> "[South Coast's] services could only be billed out at a rate of $135.00 per hour and were eligible for reimbursement under the various relocation re[gu]lations. However, the invoices for these services had to be submitted through Ag-Weld, signed off by Ag-Weld and transmitted to the CHSRA via [CHSRA's processing agent] for review, approval and payment. At the express direction of Ag-Weld, those invoices were to be sent to Ag-Weld's counsel, Glen Block, for processing. Those invoices (invoice nos. 1621.1 – 1621.15.1) total $728,947.64 and have, upon information and belief, never been processed or submitted to the CHSRA for review, payment or approval even though Ag-Weld was obligated to do so."

6.

The complaint's second cause of action alleges Ag-Weld breached the contract by, among other things, "[f]ailing and refusing to acknowledge responsibility for or to reimburse South Coast for costs arising from the services provided" and "[f]ailing to process with the CHSRA the reimbursable relocation services in a reasonable, adequate, and timely manner."

The complaint's sixth cause of action for interference with prospective business advantage alleges CHSRA's rules and regulations required that any invoices eligible for reimbursement by CHSRA had to be submitted to Ag-Weld, signed off by Ag-Weld, and forwarded to CHSRA. It also alleges:

> "It is unknown which, if any, of the costs incurred by South Coast were forwarded to CHSRA for payment. Per the direction of Ag-Weld, the invoices for the $728,647.64 in professional services were sent to Ag-Weld's counsel, Glen Block, for handling. It is unknown whether any amounts were submitted and, if so, whether any amounts were paid to Ag-Weld."

The sixth cause of action also alleged (1) Ag-Weld knew that South Coast was a third party beneficiary of CHSRA's reimbursement and that if Ag-Weld did not process the invoices, South Coast could not receive payment for its services and (2) Ag-Weld intended to disrupt South Coast's relationship as a third party beneficiary of CHSRA's reimbursement of eligible relocation expenses.

*Anti-SLAPP Motion*

In January 2021, Ag-Weld filed a motion under section 425.16, requesting the court strike the second cause of action for "Breach of Contract – Relocation" and the sixth cause of action for interference with prospective business advantage. Ag-Weld asserted the other causes of action were based on the construction contract and were not the subject of its motion.

Ag-Weld argued that its applications to CHSRA for reimbursement and any failure to apply for reimbursement constitutes petitioning activity protected by section

7.

425.16. Ag-Weld also argued South Coast could not establish that it had a reasonable probability of prevailing the second and sixth causes of action because South Coast judicially admitted that it did not have any facts as to whether Ag-Weld actually submitted the invoices to CHSRA.

South Coast's opposition to the anti-SLAPP motion argued the implied or express obligation of Ag-Weld to submit South Coast's invoices to CHSRA did not implicate a protected activity because applying for payment is not a petitioning activity.

Ag-Weld's reply referred to a California statute and federal regulation addressing the reimbursement of a business's relocation expenses (Gov. Code, § 7262, subd. (a)(1); 49 C.F.R. § 24.301, subd. (a)(1)), asserted a condemning entity had substantial discretion in determining a claimant's relocation expenses, and argued the act of submitting paperwork to CHSRA was the initiation of petitioning activity for which the outcome was uncertain.

*Trial Court's Ruling*

On February 4, 2021, the trial court held a hearing on Ag-Weld's anti-SLAPP motion and took the matter under submission. Less than a week later, the court issued its written ruling. First, the court determined the *failure* to submit claims for reimbursement to CHSRA was not an act in furtherance of Ag-Weld's right to petition or free speech. Second, the court found that even if protected petitioning activity was involved, South Coast had shown the requisite probability of prevailing on the breach of contract cause of action. The court stated it need not address whether South Coast had shown its sixth cause of action had the minimal merit to survive an anti-SLAPP motion. Thus, as to the sixth cause of action, the court relied entirely on its determination that the claim did not arise from protected activity.

Based on these determinations, the trial court denied the anti-SLAPP motion. The court also denied South Coast's request for attorney fees, stating it did not find Ag-

8.

Weld's motion was frivolous or solely intended to cause unnecessary delay. In April 2021, Ag-Weld filed a notice of appeal.

*Request for Judicial Notice*

In June 2021, before briefing was filed in the appeal, South Coast submitted a request for judicial notice of (1) its May 17, 2021 request for dismissal without prejudice of the sixth cause of action for interference with prospective economic advantage, which was entered by the clerk of court the same day, and (2) its opposition to Ag-Weld's motion to stay action (with attached declaration and exhibits), filed June 1, 2021 in the trial court. Initially, this court deferred its ruling on the request. In November 2022, we granted the request.

South Coast asserted that an e-mail attached as an exhibit to the declaration supporting its opposition to the motion to stay the action was obtained during discovery and showed that the submission of invoices for labor, material and services had actually occurred and this fact was hidden by Ag-Weld's counsel at the time of the anti-SLAPP motion and was not part of the appellate record. The e-mail was from Darryl Root, Laura Kane's supervisor at the processing agent, to Ag-Weld's attorney and was sent on September 23, 2018. It stated:

> "The claim presented to CHSRA for professional services provided by South Coast, Inc. to Ag-Weld was denied. The primary reasons for denial include the fact that the back up for the charges claimed are in the form of diary notes that are not logically connected to specific tasks and specific scopes of work connected to relocating the business. In addition, the large amount of hours claimed is not substantiated. The information is not in an invoice format and is not even legible in many instances. Of course, Ag-Weld may Appeal this decision."

Another e-mail attached to the declaration was CHSRA's November 20, 2020 response to South Coast's request for public records relating to claims presented by Ag-Weld to CHSRA for relocation assistance. The e-mail stated that, "pursuant to

9.

[Government Code] section 6254 (k) and 49 CFR section 24.9, the records you have requested have been defined as confidential and are therefore exempt from release."

## DISCUSSION

I.  MOOTNESS

The documents in the request for judicial notice suggest that some or all of the issues raised in this appeal are now moot. An appeal becomes moot when an actual controversy that once was ripe no longer exists due to a change in circumstances. (*Davis v. Fresno Unified School Dist.* (2020) 57 Cal.App.5th 911, 926.) The test for mootness is whether the appellate court can "grant practical, effective relief." (*Citizens for the Restoration of L Street v. City of Fresno* (2014) 229 Cal.App.4th 340, 362.) Generally, when events render an appeal moot, the appellate court should dismiss the appeal rather than rendering judgment for one side or the other. (*Davis*, *supra*, at p. 927.)

Here, we consider whether the issues raised in this appeal have become moot because of (1) South Coast's discovery that Ag-Weld submitted its documents to CHSRA's processing agent (which contradicts South Coast's theory that Ag-Weld breached the contract regarding relocation services by failing to submit the invoices) and (2) South Coast's purported dismissal[1] of the sixth cause of action for interference with prospective business advantage. In analyzing whether this court can provide effective relief to Ag-Weld, we note that "[a] defendant who prevails in moving to strike a

---

[1]     We refer to a "purported dismissal" because Code of Civil Procedure section 916, subdivision (a) provides for an automatic stay of trial court proceedings "upon the matters embraced" in or "affected" by the "order appealed from." (See *Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 189.) The parties have not addressed whether the entry of a dismissal of the sixth cause of action was a proceeding on a matter affected by the order on the anti-SLAPP motion, and we do not consider whether the purported dismissal is void on its face. (See *Curtin Maritime Corp. v. Pacific Dredge & Construction, LLC* (2022) 76 Cal.App.5th 651, 665 [trial court lacked jurisdiction to dismiss complaint where denial of anti-SLAPP motion challenging the complaint was being appealed] (*Curtin Maritime*).)

complaint under section 425.16 is entitled to recover the attorney fees and costs it incurred in bringing the motion to strike. (§ 425.16, subd. (c).)" (*Curtin Maritime*, *supra*, 76 Cal.App.5th at p. 665.) Accordingly, if Ag-Weld demonstrates prejudicial error and obtains a reversal of the order denying its anti-SLAPP motion, it will be entitled to an award of its attorney fees and costs. Such an award constitutes effective relief and, therefore, this appeal is not moot. (*Curtin Maritime*, *supra*, at p. 665.)

Because Ag-Weld's entitlement to attorney fees turns on the merits of its anti-SLAPP motion, we will consider that motion as presented to the trial court. In other words, we will not rewrite or update either South Coast's cause of action for breach of the contract regarding relocation services or Ag-Weld's anti-SLAPP motion to make them consistent with the documents in South Coast's request for judicial notice. Instead, with one exception, we will consider whether the trial court erred in denying the anti-SLAPP motion based on the record before the trial court when it ruled on the motion. The exception is CHSRA's e-mail stating the records relating to Ag-Weld's claims for relocation assistance were confidential and exempt from release. (See pt. III.B.2., *post*.)

II.     BASIC PRINCIPLES

A.      Anti-SLAPP Motions

Section 425.16 provides an expedited procedure for dismissing lawsuits filed primarily to inhibit the valid exercise of the constitutionally protected rights of speech or petition. (§ 425.16, subd. (a).) Subdivision (b)(1) of section 425.16 provides:

> "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

This provision creates a two-step inquiry for resolving anti-SLAPP motions. (*Baral v Schnitt* (2016) 1 Cal.5th 376, 384 (*Baral*).) "First, the defendant must establish

that the challenged claim arises from activity protected by section 425.16. [Citation.] If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success." (*Ibid*.)

The issue presented in this appeal is whether Ag-Weld carried its burden of demonstrating the challenged claims for relief arose from protected activity—that is, any "act … in furtherance of [Ag-Weld's] right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." (§ 425.16, subd. (b)(1).) The quoted statutory text is defined in section 425.16, subdivision (e):

> "As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

The purpose of these four categories is to "provide objective guidelines that lend themselves to adjudication on pretrial motion." (*City of Montebello v. Vasquez* (2016) 1 Cal.5th 409, 422 (*Vasquez*).) When courts interpret and apply the foregoing text, their primary goal is to give effect to the anti-SLAPP statute's underlying purpose. (*FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133, 154 (*FilmOn*).) Thus, courts should liberally extend the statute's protection "where doing so would 'encourage continued participation in matters of public significance,' but withhold that protection otherwise. (§ 425.16, subd. (a).)" (*Ibid.* [document in question was not issued in furtherance of free speech *in connection with* an issue of public interest].)

12.

### B. Standard of Appellate Review

Appellate courts review de novo the grant or denial of an anti-SLAPP motion. (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067 (*Park*).) Under this standard of review, appellate courts "exercise independent judgment in determining whether, based on our own review of the record, the challenged claims arise from protected activity." (*Ibid.*)

## III. PROTECTED ACTIVITY

A defendant carries its initial burden by (1) identifying the activity that underlies or forms the basis for each challenged claim for relief and (2) demonstrating that activity is protected by the anti-SLAPP statute. (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 884 (*Wilson*).) Thus, the speech or petitioning activity *itself* must be the wrong complained of, not just evidence of liability or a step leading to a different act for which liability is asserted. (*Ibid.*)

Here, South Coast's complaint alleges the invoices it submitted to Ag-Weld's counsel "have, upon information and belief, never been processed or submitted to the CHSRA for review, payment or approval even though Ag-Weld was obligated to do so." Thus, the conduct that forms the basis for the claims for (1) breach of contract regarding relocation service and (2) interference with prospective business advantage is an omission—that is, the failure to forward South Coast's documents to CHSRA's processing agent.

Ag-Weld contends that South Coast's second and sixth causes of action directly target its petitioning activity because submitting requests for approval of relocation expenses to a governmental body constitutes petitioning activity for purposes of the anti-SLAPP statute. Ag-Weld also contends that declining to petition is an act in furtherance of its right to petition. More specifically, it argues that the alleged failure to process the documents for reimbursable relocation services constitutes "protected petitioning activity pursuant to … section 425.16, subdivisions (b)(1), (e)(1) and (e)(2)."

Based on the contents of the complaint and the arguments presented, we conclude the conduct that underlies or forms the basis of the sixth cause of action and the challenged portion of the second cause of action is Ag-Weld's alleged failure to send CHSRA South Coast's documents requesting payment for reimbursable relocation services. Consequently, the question presented is whether that failure qualifies as activity protected by section 425.16. Accordingly, we return to the text of subdivision (e) of section 425.16 and consider how the wording of its categories applies to the facts of this case. (See *Cavey v. Tualla* (2021) 69 Cal.App.5th 310, 336 [process of statutory construction begins with the words of the statute itself and gives those word their usual and ordinary meaning].)

A. Section 425.16, Subdivisions (e)(1) and (e)(2)

Despite the importance of the statute's text, Ag-Weld's appellate briefs do not quote the definition of an " 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' " set forth in section 425.16, subdivision (e). Nonetheless, Ag-Weld's opening brief identifies the statutory basis for Ag-Weld's argument that the failure to submit documents constitutes protected activity by citing paragraphs (1) and (2) of subdivisions (e) of section 425.16 in three different places. The first paragraph refers to "*any written or oral statement or writing* made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law." (§ 425.16, subd. (e)(1), italics added.) The second paragraph refers to "*any written or oral statement or writing* made in connection with an issue under consideration or review by a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law." (§ 425.16, subd. (e)(2).)[2]

---

[2] Ag-Weld's reliance on these two paragraphs is significant in this case because those types of protected activity do not include "[t]he 'public interest' component of

14.

Ag-Weld's decision to ignore the wording in these provisions means it did not explain how a failure to submit documents constitutes "a written or oral statement" or a "writing" made by it for purposes of section 425.15, subdivisions (e)(1) and (e)(2). However, Ag-Weld has discussed First Amendment cases setting forth the principles that freedom of speech includes both the right to speak freely and the right to refrain from speaking and that freedom of association includes a freedom not to associate. (E.g., *Janus v. American Federation of State, County & Mun. Employees, Council 31* (2018) 585 U.S. ---, ---, 138 S.Ct. 2448, 2463, 201 L.Ed.2d 924.) In addition, Ag-Weld has discussed *Kronemyer v. Internet Movie Database Inc.* (2007) 150 Cal.App.4th 941 (*Kronemyer*), an anti-SLAPP case in which the plaintiff argued inactivity was not protected speech for purposes of section 425.16. Accordingly, we consider whether *Kronemyer* supports Ag-Weld's position that a failure to submit documents is protected under paragraphs (1) and (2) of subdivision (e) of section 425.16.

In *Kronemyer*, the plaintiff claimed he was an executive producer of certain motion pictures and defendant Internet Movie Database, Inc. (IMDb) did not identify him as a producer in its Web site's listing of credits for those motion pictures. (*Kronemyer*, *supra*, 150 Cal.App.4th at pp. 944, 947.) After Kronemyer's request to correct the credits listed on the Web site went unanswered, he filed a declaratory relief action demanding IMDb be required to identify him as a producer of three movies included on its Web site. (*Id*. at p. 944.) IMDb responded to the declaratory relief action by filing an anti-SLAPP motion. (*Ibid*.)

Kronemyer opposed IMDb's anti-SLAPP motion on the ground his lawsuit did not fall within the ambit of section 425.16. (*Kronemyer*, *supra*, 150 Cal.App.4th at p. 945.) At the hearing on the motion, Kronemyer asserted the gravamen of his complaint was

_____

section 425.16, subdivision (e)(3) and (4)." (*Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.* (2005) 129 Cal.App.4th 1228, 1246.)

15.

IMDb's silence in response to his inquiry and he argued silence was not protected speech. (*Ibid.*)  The trial court rejected this argument and granted the motion, concluding IMDb's conduct was in furtherance of its constitutional right of free speech in connection with a public issue, within the meaning of section 425.16, subdivision (e)(3).  The trial court also "ruled that the listing of credits for My Big Fat Greek Wedding, a very successful motion picture, [wa]s a matter of considerable public interest."  (*Kronemyer*, *supra*, at p. 945.)

In the appeal, the Second Appellate District described Kronemyer's arguments as follows:

> "[Kronemyer] argues that there was no act in furtherance of the right of free speech as required by section 425.16, subdivision (b)(1) because [IMDb] did nothing in response to his request to correct the credits.  He characterizes his lawsuit as based on inaction—a failure to speak—rather than conduct or speech.  Based on the same reasoning, he also argues that there was no act by [IMDb] that triggered section 425.16.  These arguments have no merit because the gravamen of the lawsuit is *the content of [IMDb's] Web site*: the producer credits for the films at issue.  As we explain, the listing of credits on [IMDb's] Web site is an act in furtherance of the right of free speech protected under the anti-SLAPP statute.  It is, of course, well established that the constitutional right of free speech includes the right not to speak."  (*Kronemyer*, *supra*, 150 Cal.App.4th at p. 947, italics added and footnote omitted.)

The Second Appellate District's analysis of the statutory text included a quote of paragraphs (3) and (4) of subdivision (e) of section 425.16.  (*Kronemyer*, *supra*, 150 Cal.App.4th at p. 946.)  It then addressed two main issues involving the application of that text.

First, the court stated "the controversy is over the content of [IMDb's] Web site, which constitutes *written statements* within the meaning of section 425.16, subdivision (e)(3)."  (*Kronemyer*, *supra*, 150 Cal.App.4th at p. 947, italics added.)  The court supported its conclusion that the controversy arose from written statements—that is, the content of the Web site —by referring to the prayer for relief, which asked the trial court

16.

to require IMDb to change the content of the Web site to identify Kronemyer as a producer on the motion pictures at issue. (*Kronemyer*, *supra*, at p. 947.)

Second, the court addressed Kronemyer's argument "that any speech by [IMDb] was not in connection with a public issue or an issue of public interest as required by section 425.16," which included the argument that the Web site was unprotected commercial speech. (*Kronemyer*, *supra*, 150 Cal.App.4th at p. 948.) The court rejected the commercial speech argument on the ground the listing of credits on the Web site was informational and not directed at sales. (*Ibid*.) The court then turned to the public interest component of subdivisions (e)(3) and (e)(4) of section 425.16, stating it was met when the statement or activity precipitating the claim for relief involved a topic of widespread public interest and the statement in some manner itself contributed to the public debate. (*Kronemyer*, *supra*, at p. 949.) Based on the declarations in the record, the court concluded the motion picture My Big Fat Greek Wedding was a topic of widespread public interest. (*Ibid*.)

With the line of reasoning adopted in *Kronemyer* in mind, we return to the application of section 425.16, subdivisions (e)(1) and (e)(2) to the facts of this case. First, we consider whether the conclusion in *Kronemyer* that the content of IMDb's Web site constituted a "written statement" for purposes of subdivision (e)(3) supports the position that the failure to submit documents to CHSRA constituted "a written or oral statement" or a "writing." The contents of the Web site, which included words listing credits for a motion pictures, clearly involve written statements. In contrast, there is no use of words, oral or written, by Ag-Weld that are the basis for South Coast's claim that Ag-Weld is liable for failing to submit documents to CHSRA. Therefore, we conclude *Kronemyer* is distinguishable because it involved a written statement by IMDb and the basis for South Coast's challenged claims is not a "writing" or "statement" by Ag-Weld for purposes of subdivisions (e)(1) and (e)(2) of section 425.16. Consequently, we

17.

conclude those provisions do not cover the alleged failure of Ag-Weld to submit documents to CHSRA.

B.      The Catchall Provision Defining Protected Activity

Having considered the provisions of section 425.16, subdivision (e) cited in Ag-Weld's opening brief, we next consider the application of subdivision (e)(4) of section 425.16—the anti-SLAPP statute's so-called catchall provision. It states that an act in furtherance of a person's right of petition or free speech includes "*any other conduct* in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech *in connection with a public issue or an issue of public interest*." (§ 425.16, subd. (e)(4), italics added.) For purposes of this appeal, we liberally interpret Ag-Weld's argument that a failure to submit documents constitutes protected activity as implying the catchall provision applies because the catchall provision addresses "conduct" and, thus, is not limited to oral and written statements and writings like the three earlier provisions. (§ 425.16, subd. (e)(4).)

*1.     Any Other Conduct*

In *FilmOn*, *supra*, 7 Cal.5th 133, our Supreme Court referred to the phrase "any other conduct" and stated its use in section 425.16, subdivision (e) "underscores its role as the 'catchall' provision meant to round out the statutory safeguards for constitutionally protected expression. [Citation.] In protecting '*any* other conduct' that meets the requirements laid out in its text (§ 425.16, subd. (e)(4), italics added), subdivision (e)(4) proves both broader in scope than the other subdivisions, and less firmly anchored to any particular context." (*FilmOn*, *supra*, at pp. 144-145.)

We construe the words "any" and "conduct" by giving them their ordinary meaning. (See *Cavey v. Tualla*, *supra*, 69 Cal.App.5th at p. 336 [words in a statute are given their usual and ordinary meaning].) The word " 'any' " means " 'of whatever kind' " or " 'without restriction.' " (*Zabrucky v. McAdams* (2005) 129 Cal.App.4th 618,

628.)  The word "conduct" usually has a broad meaning.  For instance, "conduct" is defined a "[p]ersonal behavior, whether by action or inaction, verbal or nonverbal; the manner in which a person behaves; collectively, a person's deeds."  (Black's Law Dict. (11th ed. 2019).)  Similarly, Evidence Code section 125 states:  " 'Conduct' includes all active and passive behavior, both verbal and nonverbal."

Based on the ordinary meaning of the words "any" and "conduct," we conclude the alleged failure of Ag-Weld to submit documents to CHSRA constitutes "conduct" for purposes of subdivision (e)(4) of section 425.16.  (See *Navellier v. Sletten* (2002) 29 Cal.4th 82, 90 [concluding "that each of Sletten's acts (or omissions) … falls squarely within the plain language of the anti-SLAPP statute"]; *Suarez v. Trigg Laboratories, Inc.* (2016) 3 Cal.App.5th 118, 124 ["failure to disclose can be protected petitioning activity for purposes of section 425.16"]; *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 671-672 [concluding the alleged "stalling and stonewalling tactics" on the part of the defendant attorneys "may not have been communicative [acts] per se, [but] they appear to constitute 'conduct in furtherance of the exercise of the constitutional right of petition' " for purposes of § 425.16, subd. (e)(4) because they were litigation tactics employed in an ongoing lawsuit].)

### 2.    *Public Issue or Issue of Public Interest*

Based on the foregoing conclusion, subdivision (e)(4) of section 425.16 will apply to Ag-Weld's alleged failure to submit documents to CHSRA if that failure was "in connection with a public issue or an issue of public interest."  (*FilmOn*, *supra*, 7 Cal.5th at p. 151.)  When speech is involved, the text of the catchall provision "calls for a two-part analysis rooted in the statute's purpose and internal logic."  (*Id.* at p. 149.)

> "First, we ask what 'public issue or [ ] issue of public interest' the speech in question implicates—a question we answer by looking to the content of the speech.  (§ 425.16, subd. (e)(4).)  Second, we ask what functional relationship exists between the speech and the public conversation about

some matter of public interest. It is at the latter stage that context proves useful." (*FilmOn*, *supra*, 7 Cal.5th at pp. 149-150.)

In *Geiser v. Kuhns* (2022) 13 Cal.5th 1238, the Supreme Court restated this inquiry using more general language: "[F]irst, we ask what public issue or issues the challenged activity implicates, and second, we ask whether the challenged activity contributes to public discussion of any such issue." (*Id*. at p. 1243.) In our view, the word "activity" in this formulation can be replaced by "behavior" or "conduct" to address situations where, like the present case, the potentially protected activity is an omission (i.e., a failure to act).

Based on the record presented, we are unable to discern how the alleged failure to submit documents to CHSRA implicated a public issue or, alternatively, contributed to the public discussion of any such issue. Ag-Weld, the party with the burden of demonstrating such a failure is protected activity, has presented no argument for how the two-part inquiry set forth in *Geiser v. Kuhns* and *FilmOn* is satisfied by the facts of this case.

The conclusion that the record presented to the trial court does not demonstrate the challenged conduct implicated a public issue and contributed to the public discussion of such an issue is confirmed by a document in South Coast's request for judicial notice. The November 20, 2020 e-mail from CHSRA to South Coast's attorney stated "the records you have requested have been defined as confidential and are therefore exempt from release." The CHSRA's decision about confidentiality supports the conclusions that (1) there was no public issue connected to Ag-Weld's alleged failure to submit documents and (2) the failure did not contribute to a public discussion. (See 49 C.F.R. § 24.9, subd. (c) [confidentiality of records].)

Consequently, Ag-Weld has not demonstrated the alleged failure to submit documents was "in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e)(4).) As a result, Ag-Weld has not carried its burden of demonstrating

South Coast's cause of action arose from activity protected by section 425.16. Therefore, we do not reach the second step of the anti-SLAPP analysis and address whether South Coast carried its burden of demonstrating the claims had the minimal merit need to survive an anti-SLAPP motion.

IV.     CONTRACTUAL WAIVER

Our Supreme Court has stated that "a defendant who in fact has validly contracted not to speak or petition has in effect 'waived' the right to the anti-SLAPP statute's protection in the event he or she later breaches that contract." (*Navellier v. Sletten*, *supra*, 29 Cal.4th at p. 94; see *Olson v. Doe* (2022) 12 Cal.5th 669, 679.) We conclude this principle about not speaking or petitioning applies with equal force to a valid contract to petition, such as Ag-Weld's agreement to submit documents to CHSRA. Accordingly, an alternate ground for affirming the trial court's denial of Ag-Weld's anti-SLAPP motion is that Ag-Weld "waived" the statute's protection of its choice not to petition CHSRA for the payment of South Coast's invoices by agreeing to submit the documents to CHSRA.

## DISPOSITION

The order denying Ag-Weld's anti-SLAPP motion is affirmed. South Coast shall recover its costs on appeal.

SMITH, J.

WE CONCUR:


FRANSON, Acting P. J.


PEÑA, J.

21.